STATE OF VERMONT

SUPERIOR COURT                                     ENVIRONMENTAL DIVISION

| | |
|---|---|
| | } |
| In re Village Associates Act 250 Land Use Permit | } Docket No. 6-1-08 Vtec |
| (Appeal of Village Associates, LLC) | } |
| | } |

Decision and Order

Appellant-Applicant Village Associates, LLC[1] (Applicant) appealed from a decision of the District 4 Environmental Commission, granting Applicant's Act 250 permit for an affordable housing development but requiring an off-site mitigation fee under 10 V.S.A. §§ 6086(a)(9)(B)(iv) and 6093. Applicant is represented by Heather R. Hammond, Esq.; and the Agency of Agriculture, Food and Markets is represented by Assistant Attorney General Diane E. Zamos, Esq. The Land Use Panel of the Natural Resources Board has informational status through John H. Hasen, Esq., but did not participate in the merits of this appeal or in the briefing on remand. The Agency of Natural Resources also has informational status, but did not enter an appearance or otherwise participate.

The only issue was whether or not the project involved primary agricultural soils, and therefore whether the mitigation fee would be required to be paid; no party contested the grant of the permit. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. A site visit was taken by Judge Wright alone, by agreement of the parties, including, at the request of the parties, driving to or past a number of area agricultural operations mentioned in evidence. This Court issued a Decision and Order on April 30, 2009, ruling that the

---

[1] As of the time of trial, the project property was being transferred to Housing Vermont, Inc., which will own and operate the project.

1

project property contains 10.85 acres of primary agricultural soils as defined by 10 V.S.A. § 6001(15), and therefore requiring Applicant to pay an off-site mitigation fee in an amount previously agreed upon by the parties.

On appeal, the Vermont Supreme Court reversed that decision, holding that this Court erred in not considering the cost of clearing trees to prepare the property for agricultural use in determining whether the presence of trees on the property is a limitation to agricultural use that cannot be easily overcome. The Supreme Court remanded for this Court to consider that cost in determining whether the 10.85 acres of soils at issue in the appeal constitute primary agricultural soils requiring the payment of an off-site mitigation fee. In re Village Associates Act 250 Land Use Permit, 2010 VT 42A.

The Supreme Court analyzed the 2006 amendment to 10 V.S.A. § 6001(15) and concluded that although

> [t]he amended statute contemplates instances where the presence of trees and the cost of removing them will create a limitation for cultivation[2] that is simply impossible to overcome[,] there is nothing in the statute mandating this outcome whenever forested land is involved. Indeed, there may also be instances where it is entirely feasible and economically practicable to remove trees to ready land for agricultural use—the fact that trees themselves have economic value suggests that this may often be the case. For instance, testimony from Agency officials indicated that there may be ways to overcome the cost of tree removal, including removing the trees over an extended period of time or allowing the farmer to remove the trees himself. These

---

[2] See also the analysis of the consideration of economics in the "Farmland Classification Systems for Vermont Soils" published by the U.S. Department of Agriculture's Natural Resources Conservation Service (USDA-NRCS), in evidence in the present case as State's Exhibit B, and the analogous language used in Act 250 regarding primary agricultural soils, discussed in In re Brosseau/Wedgewood Act 250 PRD Application, No. 260-11-08 Vtec, slip op. at 6–11, n. 15 (Vt. Super. Ct. Envtl. Div. Dec. 8, 2010) (Wright, J.).

questions will be for the Environmental Court to consider on remand. Village Associates, 2010 VT 42A, ¶ 22. The Supreme Court went on to explain that the test does not involve a comparison with the cost to ready the land for development, but "[i]nstead, consideration of the cost of removing a limitation will involve only a consideration of whether the cost of removal is so high that conversion of the land into agricultural use is not economically feasible." Id., at ¶ 23.

Following the remand, the parties were given the opportunity to present supplemental evidence, as well as to submit supplemental written memoranda and requests for findings. The parties declined the opportunity for a supplemental hearing to submit additional evidence regarding the cost of clearing the property of trees in preparation for agricultural use. The parties submitted supplemental requests for findings and brief supplemental memoranda of law. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows, in addition to the findings and conclusions of the 2009 Decision and Order not implicated in the remand. Findings and conclusions from that decision are restated here only as necessary.

Applicant proposed a multi-unit affordable housing development, known as Brookside Village, which was granted an Act 250 permit and is the subject of the present appeal. The parties do not contest the grant of the permit. The parties agree that 10.85 acres of soils with an agricultural value of 6, and therefore classified as of "statewide" importance under the USDA-NRCS soils classification system, will be affected by the project. These soils are located on the project property on a plateau above the floodplain of the Winooski River and contain a healthy eastern woodland, including some stands of mature trees as well as regenerating eastern woodland of predominantly hardwood species. Applicant does not dispute the quality of the

soils on the project property, their physical and chemical characteristics, or their soil map classifications.

The parties also do not contest that payment of an off-site mitigation fee is appropriate if the soils at issue do qualify as primary agricultural soils. The parties have entered into a mitigation agreement in compliance with subsections (i) through (iv) of 10 V.S.A. § 6086(a)(9)(B) and with 10 V.S.A. § 6093, to take effect if the 10.85-acre area is determined to constitute primary agricultural soils under 10 V.S.A. § 6001(15).

The cost of clearing the trees from the property for the purpose of building the housing development is approximately $150,000.[3] This cost includes approximately $20,000 allocated to professional loggers for tree cutting and removal of the cut trees; approximately $50,000 for erosion control during site preparation; approximately $40,000 in "machine time" for the leasing, labor, and fuel costs for the machines necessary to do the site preparation work, including removal of the stumps and roots; and approximately $40,000 for trucking stumps and roots away from the site, including the dumping fees for those stumps and roots. However, not all of the components of this cost would be required if the land were to be cleared for agriculture.

---

[3]  This cost is the cost of clearing about ten acres of trees for the entire proposed development. However, no evidence was presented that all of the ten acres of clearing would be taking place on the 10.85 acres of soils classified as "statewide" at issue in this appeal. That is, 1.21 acres of soils that do not qualify as farmland of "prime," "statewide," or "local" importance under the USDA-NRCS classification system are also affected by the project. If any of that area of unrelated soils needs to be cleared for the project development, the development cost figures should be discounted by that amount, as the only issue in the present case on remand is the cost of clearing the agricultural soils for farming. If the estimated cost of clearing the land for the proposed development is allocated entirely to the 10.85 acres at issue, the cost of conversion of the land for development is, as stated in Applicant's memorandum, approximately $13,825 per acre.

The cost of clearing the trees from the property in preparation for agricultural use would be far less than that required for development. The $50,000 cost of erosion control during the site preparation and development process would not be incurred by a farmer. With regard to erosion control for development, Applicants were required to prepare and follow an erosion control plan, required for construction projects, because the ground surface is disturbed during site preparation and construction. One requirement of the plan, for example, is for the developer to stabilize the soil at the work entrance to the site by putting down erosion control matting. By comparison, an erosion control plan is not required for simply logging the land. Loggers must instead comply with certain management practices standard in the industry and therefore included in the professional logger's estimate of $20,000 for logging and removing the cut logs and tree debris.

There is good access from the project property for the removal of timber to a flat area at West Street. There is no technical or physical impediment to the removal of trees from the 10.85-acre portion of the project property at issue in this appeal. The mature trees have value if harvested for timber, although the dollar value of that timber was not established in evidence. The regenerating forest and the branches and debris from the mature trees would have value if harvested for wood chips to supply the nearby McNeil electric generating plant, although the dollar value of the wood chips was not established in evidence.[4]

For agriculture, although the stumps and roots have to be removed from the soil in order to farm, they do not have to be taken off site, but can be left in stump dumps on the site but away from or at the edges of the agricultural fields. Thus,

---

[4] The estimate of $20,000 for logging during construction is net of expected revenue to the logger from sale of the trees for lumber or wood chips. The fact that revenue from sale of the trees is included in the $20,000 of the cost allocated to logging does not change the result in this case, as further discussed below.

even if the removal of stumps and roots from the ground, in preparation of the land for agriculture, would have incurred the entire $40,000 of machine costs as would have been incurred for development, none of the other $40,000 of trucking costs and dumping fees (to take the stumps and roots away from the property) would have to be incurred to prepare the property for agriculture.

Thus, even using the cost components as estimated by Applicant, the cost of tree removal to convert the land to agriculture is likely to be approximately a total of $60,000, calculated from the $20,000 allocated to logging the property plus the $40,000 of machine costs for removing the stumps and roots and placing them elsewhere on the property away from the agricultural fields, or a total of approximately $5,530 per acre for the 10.85-acre area.

In addition, a farmer can further overcome the cost of tree removal for conversion to agriculture by removing the trees over an extended period of time, by using the revenues from farming on the earlier-cleared acreage to offset the cost of later clearing, and by doing some or all of the work using the farmer's own labor and equipment rather than by incurring the cost of outside logging or stump-removal contractors. If the work is done by the farmer, the revenue to the farmer from the sale of trees for lumber or wood chips would further overcome the cost of tree removal.

Balanced against the cost of preparing the land for agriculture, a small, diversified specialty vegetable and soft fruit farming operation could succeed on the 10.85-acre portion of the project property if that portion of the property were cleared of trees. The cleared property would be capable of earning a gross income of approximately $22,500 per acre if used for a Community Supported Agriculture (CSA) operation.[5]

---

[5] Although the Court also found in the initial decision that the 10.85-acre portion of

This gross income of $22,500 per acre would therefore be able to offset even the $13,825-per-acre one-time cost of tree removal for development, if amortized over just a few years. It would certainly be able to offset the $5,530 per acre one-time cost of tree removal for agriculture, particularly if amortized over a few years. The costs may be further reduced if the trees are removed over an extended period of time, if the work is done by the farmer, and if the cost is offset by sale of the trees for lumber or wood chips. In any of these scenarios, the cost of clearing the 10.85 acre area at issue in the present case for agricultural use is not "so high that conversion of the land into agricultural use is not economically feasible." Village Associates, 2010 VT 42A, ¶ 23.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the project will result in the reduction of the agricultural potential of 10.85 acres of primary agricultural soils, and therefore that the previously agreed amount of off-site mitigation fee is required to be paid.

Done at Berlin, Vermont, this 6th day of January, 2011.

_____
Merideth Wright
Environmental Judge

---

the property could contribute to nearby agricultural operations if cleared of trees and planted in hay or used for pasture, for the purposes of considering whether the cost of conversion for agriculture is economically feasible, it is appropriate to consider the more intensive and more value-added CSA use in that calculation.